**FRANKEL SYVERSON PLLC**
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (AZ#027179)
ty@frankelsyverson.com

**FRANKEL SYVERSON PLLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (AZ#020191)
patti@frankelsyverson.com

*Law Offices of*
***SOMMERS SCHWARTZ, P.C.***
*One Towne Square, 17th Floor*
*Southfield, Michigan 48076*
*Telephone: (248) 355-0300*
*Jason J. Thompson (MI Bar No. P47184)**
*jthompson@sommerspc.com*
**Pro Hac Vice Motion forthcoming*

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| M. Pamela Bomar-Lindsay, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>Carvana LLC, an Arizona Limited Liability Company d/b/a Carvana Co., Carvana Co., a Delaware corporation, and Carvana Auto Receivables 2016-1 LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No.:<br><br>**FLSA COLLECTIVE ACTION COMPLAINT**<br><br>[Jury Trial Demanded] |

Plaintiff, M. Pamela Bomar-Lindsay, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective Action Complaint against Defendants Carvana LLC, an Arizona Limited Liability Company d/b/a Carvana Co., Carvana Co., a Delaware corporation, and Carvana Auto Receivables 2016-1 LLC, a Delaware Limited Liability Company, (hereafter "Defendants" or "Carvana") for wage violations, and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendants' systemic failure to compensate their employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

2. Plaintiff and the putative collective members consist of current and former Customer Service Representatives, Customer Service Specialists or similar positions ("Customer Service Specialists"), who were compensated on an hourly basis. Throughout the relevant period, Defendants maintained a corporate policy and practice of failing to compensate their Customer Service Specialists for all pre-, mid- and post- shift off-the-clock work.

3. Regardless of the specific job title, all Customer Service Specialists: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendants' customers.

4. Defendants required their Customer Service Specialists to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Customer Service Specialists only "clocked in" and received compensation *after* this preliminary work was completed,

though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. A Customer Service Specialist's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), would result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6. The Customer Service Specialists routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Customer Service Specialists, even those Customer Service Specialists who were scheduled and paid for only 40 hours per week, worked over 40 hours per week without the required overtime premium for all time worked over 40 hours.

7. Defendants utilize Customer Service Specialists in the business, who regularly incur off-the-clock work without compensation. Defendants suffered or permitted, and in fact trained and required, their Customer Service Specialists to complete this unpaid work.

8. The U.S. Department of Labor recognizes that call center jobs, which are similar to the positions held by Defendants' Customer Service Specialists, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendants' refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited October 7, 2025).

9. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily

or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

10. Defendants' practice of failing to compensate their Customer Service Specialists for all hours worked violated the Customer Service Specialists' rights under the FLSA.

11. Defendants are liable for their failure to pay their Customer Service Specialists for all work performed and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

12. Customer Service Specialists who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre- and post-shift work performed for Defendants, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

14. Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15. Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees, including Plaintiff and the Customer Service Specialists, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

16. The United States District Court for the District of Arizona has personal jurisdiction over Defendants for the out of state collective members' claims pleaded because Defendants conduct business, and maintain a principal place of business, within

Tempe Arizona. *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017).

17. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendants conduct business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

**PARTIES**

18. Plaintiff was a Customer Service Specialist and was employed from November, 2021 to December, 2023.

19. She worked as an hourly employee earning $22.00 per hour. She was typically scheduled to work 4 days a week from 9:00 am to 7:30 pm; 10 hours a day; for a 40-hour work week.

20. She worked overtime and was supposed to be paid time and a half for any hours over 40 but was not paid overtime that she was due.

21. Plaintiff's work responsibilities required her to load approximately 3-5 computer programs before she punched in to start her workday, which took approximately 10 minutes.

22. She received two 15-minute breaks and a half hour unpaid lunch. However, she was required to punch in and out for breaks and lunch; she routinely cut her lunch by 3-5 minutes to punch back in timely.

23. Plaintiff signed a consent form to join this collective action lawsuit. ***Exhibit A***.

24. Additional putative Collective members were or are employed by Defendants as Customer Service Specialists in different locations during the past three years and their consent forms will also be filed in this case.

25. Defendant Carvana LLC, is an Arizona Limited Liability Company d/b/a Carvana Co.

26. Defendant Carvana Co. is a Delaware corporation.

27. Defendant Carvana Auto Receivables 2016-1 LLC is a Delaware Limited Liability Company.

28. Upon information and belief, Defendants, collectively, or among themselves, operate as an online used car retailer commonly known as "Carvana" and are headquartered in Tempe, Arizona, at 300 E. Rio Salado Parkway, Tempe AZ 85281.

29. Carvana claims to be "the second largest used automotive retailer in the U.S." and "the leading e-commerce platform for buying and selling used cars."[1]

30. Carvana has generated $25.7 billion in used car sales since launching in 2013, including $9.9 billion in 2021. It currently operates over 30 vehicle vending machines in the US, and is available in Alabama, Arizona, Indiana, North Carolina, Georgia, Dallas-Fort Worth, and Central Florida.

## GENERAL ALLEGATIONS

31. Throughout their employment with Defendants, Plaintiff and other Customer Service Specialists were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

32. Upon information and belief, Defendants employed hundreds if not thousands of Customer Service Specialists – including Plaintiff – within the past three years and across the United States to assist their customers with their customer service needs.

33. Defendants compensated their Customer Service Specialists on an hourly basis and classified them as nonexempt employees under the FLSA.

34. Upon information and belief, Defendants maintain documents that demonstrate the promised hourly wage for each Customer Service Specialist, including but not limited to: offer letters, paystubs, and/or other payroll records.

35. Defendants' Customer Service Specialist positions typically have schedules that require employees to work at least eight (8) hours per day, on average five (5) days

---

[1] Carvana Co. Annual Report (Form 10-K), at 6, 2 (Feb. 24, 2022), https://otp.tools.investis.com/clients/us/carvana/SEC/sec-show.aspx?Type=html&FilingId=15600155&CIK=0001690820&Index=10000 ("2022 Form 10-K").

each week, and forty (40) hours or more in a workweek. However, in some workweeks, Defendants' Customer Service Specialists work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours.

36. Regardless of the number of days worked in a week, if Defendants' Customer Service Specialists strictly adhere to Defendants' baseline forty (40) hour schedule, the Customer Service Specialists' schedule results in Customer Service Specialists working overtime on a weekly basis. Even in weeks in which they work less than 40 hours, they have regular wages due for work they were required to perform off the clock.

37. Throughout their employment with Defendants, Plaintiff and the other Customer Service Specialists' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

38. Once hired, Defendants provided all Customer Service Specialists with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendants' policies related to each topic. The training Defendants' Customer Service Specialists receive is substantially, if not entirely, the same and all Customer Service Specialists are subject to the same disciplinary policies.

39. Plaintiff and other similarly situated Customer Service Specialists are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendants' Customer Service Specialists to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls and/or attend meetings the moment their shift begins. A Customer Service Specialist's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendants force their Customer Service Specialists to perform the boot-up and login process before clocking into Defendants' timekeeping system.

40. All of Defendants' Customer Service Specialists use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and indispensable part of the Customer Service Specialist's work, and they cannot perform their jobs without them.

41. Once training is completed and to perform their job duties, Plaintiff and all other Customer Service Specialists are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Customer Service Specialists are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

42. The pre-shift off-the-clock time Plaintiff and all other Customer Service Specialists spend booting up, logging in, and logging off their computers directly benefits Defendants and is integral and indispensable to the Customer Service Specialists' job responsibilities.

43. Despite knowing Plaintiff and all other Customer Service Specialists perform pre-, mid-, and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

44. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other Customer Service Specialists boot up and log into their computers each day, along with the time they log into their telephone systems and the time they log off and shut down their computers.

45. Because Defendants required their Customer Service Specialists to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Customer Service Specialists spend working for Defendants. Thus, the hours reflected on the Customer Service Specialists' paystubs are also inaccurate representations of the hours they worked.

46. Plaintiff and similarly situated Customer Service Specialists regularly worked overtime and non-overtime hours for which they were not paid.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

47. Defendants maintained detailed attendance and schedule adherence policies and used them to evaluate their Customer Service Specialists' job performance.

48. Defendants used their attendance/schedule adherence policies to require their Customer Service Specialists to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

49. Throughout their employment with Defendants, Plaintiff and other Customer Service Specialists were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

50. Upon arriving at their home computer, Defendants' Customer Service Specialists were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

51. The pre-shift boot-up and login process generally consisted of opening computer apps that were necessary and integral and indispensable for the job duties, and were common and ubiquitous for all the Customer Service Specialists.

52. Once all applications to be "call ready" were opened, Customer Service Specialists would then open the timekeeping application, clock in, and their time clock would start.

48. The boot-up and login process described above took substantial time on a daily basis, ranging from 10 to 20 minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

49. Customer Service Specialists were required to complete each of these tasks prior to "punching in," as Customer Service Specialists could not be "phone ready" until these tasks were complete.

50. If Customer Service Specialists arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

51. Because Defendants' Customer Service Specialists typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

52. Defendants had express and constructive knowledge that their Customer Service Specialists began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

53. Defendants' Customer Service Specialists are not compensated for any of this time because Defendants prohibit Customer Service Specialists from clocking into their timekeeping software before the start of their scheduled shift.

54. The pre-shift off-the-clock work performed by Customer Service Specialists directly benefits Defendants and is integral and indispensable to their job duties and responsibilities as Customer Service Specialists.

**B. <u>Mid-Shift Off-the-Clock Work</u>**

55. Defendants provided their Customer Service Specialists with a scheduled 45-minute unpaid meal period during each work shift.

56. However, Defendants also required their Customer Service Specialists to perform off-the-clock work during these unpaid meal periods, including returning from the 45-minute meal period approximately three to five minutes early in order to have enough time to log back into Defendants' programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

57. According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or

more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited October 7, 2025).

58. The mid-shift off-the-clock time worked by Defendants' Customer Service Specialists directly benefited Defendants and the process was an integral and indispensable part of the Customer Service Specialists' job responsibilities.

59. Because Defendants' Customer Service Specialists typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

60. Defendants had express and constructive knowledge that their Customer Service Specialists took unpaid meal periods and that their Customer Service Specialists also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and "clocked in" on time for their shifts to resume.

62. Despite having express and constructive knowledge of their Customer Service Specialists' mid-shift off-the-clock work, Defendants failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to their Customer Service Specialists.

**C. <u>Post-Shift Off-the-Clock Work</u>**

63. Pursuant to Defendants' policies, training, and direction, Plaintiff and all other Customer Service Specialists are required to "clock out" of Defendants' timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

64. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five to ten minutes per shift.

65. Defendants' Customer Service Specialists are also not paid for their post-shift off-the-clock work.

66. The post-shift off-the-clock work Plaintiff and other Customer Service Specialists perform is compensable, directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Customer Service Specialists.

**D. <u>Defendants Benefitted from the Uncompensated Off-the-Clock Work</u>**

67. At all relevant times, Defendants required, and directly benefited from, the off- the-clock work performed by Plaintiff and all other Customer Service Specialists in connection with the pre-, mid- and post-shift activities described above.

68. At all relevant times, Defendants have controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Customer Service Specialists.

69. At all relevant times, Defendants were able to track the amount of time Plaintiff and all other Customer Service Specialists spend in connection with pre-, mid- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Customer Service Specialists for the off-the-clock work they performed.

70. At all relevant times Plaintiff and all other Customer Service Specialists were non-exempt hourly employees, subject to the requirements of the FLSA and similar state wage statutes.

71. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the other Customer Service Specialists in order to pressure them into performing work off-the-clock.

72. Defendants expressly trained and instructed Plaintiff and all other Customer Service Specialists to perform these off-the-clock work activities when they were not "clocked in" to Defendants' timekeeping system.

73. At all relevant times, Defendants' policies and practices deprived Plaintiff and the Customer Service Specialists of wages owed for off-the-clock work activities they performed. Because Defendants' Customer Service Specialists typically worked 40 hours

or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

74. As a result of Defendants' policies and practices, Plaintiff was denied overtime pay to which she was entitled and regular wages for time worked off the clock up to forty hours.

75. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Customer Service Specialists worked over 40 hours and exactly which weeks they worked under 40 hours.

76. Defendants knew or should have known that the time spent by Plaintiff and other Customer Service Specialists in connection with the off-the-clock work activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

77. Despite knowing Customer Service Specialists performed off-the-clock work before, during, and after their shifts, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

78. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of 40 hours in a workweek.

79. Unpaid wages related to off-the-clock work described herein are owed to Plaintiff at her hourly rate for hours she was required to work but was not paid up to forty hours in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

80. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> ***All current and former customer service specialists, customer service representatives, or similar positions who worked for Defendants at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

81. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Customer Service Specialists.

82. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

83. Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which they are due both overtime gap time and overtime.

83. Defendants assign and/or are aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

84. Upon information and belief, Defendants utilize a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

85. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engage in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants; and

d. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre- and mid-shift boot-up and post-shift shutdown process.

86. Defendants are aware or should be aware that federal law required them to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed from their regular rate of pay) for hours worked in excess of forty (40) per workweek. Defendants' unlawful conduct has been and continues to be widespread, repeated, and consistent.

87. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

88. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre-, mid- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

89. There are many similarly situated current and former Customer Service Specialists who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

90. Plaintiff estimates the FLSA Collective, including both current and former Customer Service Specialists over the relevant time period, includes hundreds of members.

The precise number should be readily available from a review of Defendants' personnel and payroll records.

91. All of the estimations discussed herein will be refined after collective discovery is completed.

**COUNT I**

**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

97. Plaintiff re-alleges and incorporates all previously paragraphs herein.

98. At all times relevant to this action, Defendants were employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, et seq.

99. Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

100. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

101. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

102. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

103. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

104. At all times relevant to this action, Defendants required Plaintiff and the proposed Collective members to regularly perform 15 to 20 minutes or more of pre-shift computer boot-up and login time, five to ten minutes of mid-shift login time, and five to

ten minutes of log out time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

105. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendants, but was not.

106. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

107. In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

108. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how much time Customer Service Specialists spent working off-the-clock to complete off-the-clock work activities, and Defendants could have properly compensated Plaintiff and the proposed Collective members for the off-the-clock work they performed, but did not.

109. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff M. Pamela Bomar-Lindsay, on behalf of herself, and the putative FLSA Collective requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed Collective members, and permitting

Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

d. Declaring Defendants' violations of the FLSA were willful;

e. Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendants and awarding Plaintiff and the proposed Collective members the full amount of damages, liquidated damages, and treble damages available by law;

f. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

g. Awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED: October 17, 2025.

**FRANKEL SYVERSON PLLC**
By *s/ Ty D. Frankel*
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**SOMMERS SCHWARTZ, P.C.**
Jason J. Thompson
One Towne Square, 17th Floor
Southfield, Michigan 48076

*Attorneys for Plaintiff*